ORIGINAL

PETITION UNDER 28 U.S.C. §2254 FOR A WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

X..............................................................X

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK

Name:  CLEMENT LOWE, Prisoner No. 00-A-2910. Case No.3738/98.

Place of Confinement:  Attica Correctional Facility
                       P.O. Box 149
                       Attica, New York 14011-149

GARAUFIS, J.

CV 12-00793

Name of Petitioner              Name of Respondent

                          v.

CLEMENT LOWE                    MARK BRADT, Superintendent
                                Attica Correctional Facility

The Attorney General of the State of NEW YORK, ERIC T. SCHNEI-
DERMAN

X..............................................................X

PETITION

1.  The name and location of the Court which entered the judg-

ment of conviction under attack herein is:  State of New York,

Supreme Court, County of Queens, 125-01 Queens Blvd. Kew Gar-

dens New York 11415.

2.  The date the judgment of conviction was rendered is:

February 13, 2001.

3.  The length of the sentence imposed is:  15 years.

4.  The nature of the offense of which I was convicted and

sentenced in this case are: One count of Unlawful Imprisonment

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.

★ FEB 1 4 2012 ★

BROOKLYN OFFICE

(1)

in the Second Degree (Penal Law. § 135.05), One count of Criminal
Possession of a Weapon in the Second Degree (Penal Law § 265.03
[2]): Two counts of Rape in the First Degree(Penal Law § 130.35
[1]); Three counts of Sodomy in the First Degree(Penal Law §130.-
50[1]).

5.   The plea I entered was:  Not Guilty.

6.   I had a trial by jury.

7.   I did testify at the trial.

8.   I appealed from the judgment of conviction.

9.   Regarding that appeal:

[a]   The name of the Court to which I appealed is the Supr-
eme Court of the State of New York, Appellate Division, Second
Department.

[b]   The appeal resulted in my conviction being affirmed.

[c]   The Order of affirmance is dated October 20, 2003, and
its citation is 309 A.D. 2d 877(App. Div. 2003).

[d]   The grounds raised on the appeal is:

> WHETHER APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL
> AND STATUTORY RIGHTS TO BE PRESENT AT ALL MATERIAL
> STAGES OF TRIAL BY HIS ABSENCE FROM AN IN-CHAMBERS
> TELEPHONE HEARING REGARDING HIS PRE-ARRAIGNMENT ST-
> ATEMENTS TO HIS ATTORNEY.   U.S. CONST. AMEND. XIV;
> N.Y. CONST.   ART. 1, §6; C.P.L. §260.20.

[e]   Further review was sought by applying for permission to
appeal to the New York Court of Appeals, and:

(i)   Leave to appeal was denied on May 15, 2004, and its
citation is 2 N.Y. 3d 752, (2004).

(ii)   The grounds raised in the leave application is the same

as that specified in 9[d] above.

[f]  I did not petition for certiorari in the United States Supreme Court.

10.  Other than the direct appeal from the judgment of conviction and sentence. I have previously filed a motion with respect to this judgment in State Court.  The following information is provided with respect to that motion:

(i)  The name of the Court to which the motion was made and the date on, and method by which it was filed are:  Motion to vacate judgment made in Supreme Court Queens County on December 10, 2008.

(ii)  The nature of the proceeding was a motion to vacate the judgment pursuant to N.Y.  C.P.L. §440.10.

(iii)  The grounds raised on the motion are:

[A]  Newly Discovered Evidence that would have altered the outcome of the trial was obtained by Petitioner after the judgment was entered.  The Newly Discovered Evidence shows that the Petitioner was in Brooklyn, Kings County on September 9, 1998, from 8:00 a.m., until 12 noon, while the People claimed that throughout 8:00 a.m-11:00 a.m.,on September 9, 1998, the Petitioner was in Far-Rockaway, Queens County raping the complainant Hollis Evertz;

[B]  Petitioner received ineffective assistance of trial counsel in that trial counsel failed to investigate two audio-tapes memorializing telephone conversations between petitioner and the complainant Hollis Evertz that would have proven helpful to the defense.

(3)

11.  I did not receive an evidentiary hearing on the motion.

12.  The motion was denied by Order dated June 24, 2010.

13.  Application for leave to appeal said denial to the Appellate Division, Second Department was denied by Order dated February 10, 2011.

14.  The instant Petition is being submitted within  the  time period required by statue.

15.  The Grounds upon which I claim that I am being held unlawfully are:

    [a]  GROUND ONE:
        THE DECISION AND ORDER OF THE LOWER COURT IN THE
        POSTJUDGMENT PROCEEDING WAS BASED ON (1): AN UN-
        REASONABLE DETERMINATION OF FACTS, (2) : HAS RE-
        STED ON FACTS NOT IN EVIDENCE NOR OTHERWISE EXI-
        STED IN LIGHT OF THE EVIDENCE PRESENTED, (3):
        TAINTED EVIDENCE, AND (4) FUNDAMENTAL MISCARRIAGE
        OF JUSTICE. (U.S. CONST. AMENDS. VI and XIV).
        (Supporting Facts on the Issues of Gound One are More
        Fully Demonstrated in the Accompanying "Memorandum to
        PETITION").

    [b]  GROUND TWO:
        THE DECISION AND ORDER OF THE LOWER COURT IN RE-
        REGARD TO A CLAIM OF INEFFECTIVE ASSISTANCE OF
        COUNSEL, WAS IN VIOLATION OF THE SUPREME COURT
        STANDARD SET FORTH IN STRICKLAND v. WASHINGTON
        WHICH DEPRIVED PETITIONER OF HIS CONSTITUTIONAL
        RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF LAW.
        (U.S. CONST. AMENDS. VI and XIV).
        (Supporting Facts on the Issue of Ground Two are More
        Fully Demonstrated in the Accompanying "Memorandum to
        PETITION").

16.  Each of the Grounds listed in paragraphs 15[a]-[b] above were previously presented in State Court on collaterial motion.

    [a]  The State Appellate Court was vested with proper auth-

ority to hear those grounds; and

[b]  Those grounds were fairly presented to that Court in a manner that fully apprised it of their Federal Constitutional nature at that time.

17.  I do not have any Petition or appeal pending in any Court, either State or Federal, for the judgment I am challenging.

18.  The following is the name and address of each attorney who represented me during Various stages of the judgment attacked herein:

[a]  At arraignment:  Jennifer Michaelson, Legal Aid Society, Queens County.

[b]  During pre-trial, trial, and sentencing: Gerald Arougheti, 101-05 Lefferts Boulevard, Suite 207, Richmond Hill, N.Y. 11419-2005.

[c]  On appeal:  Lynn W.L. Fahey(Yvonne Shivers of counsel) Appellate Advocates, 2 Rector Street-10th Floor, New York 10006.

[d]  On petition for motion to vacate judgment:  Pro Se.

[e]  On petition for writ of Habeas Corpus:  Pro Se.

19.  Currently I am serving sentence from a judgment imposed in Supreme Court of the State of New York, County of Kings.

[a]  The date the judgment of conviction was rendered is: February 25, 2000.

[b]  The length of the sentence imposed is:  34 years.

[c]  The nature of the offenses of which I was convicted and sentenced in the Kings County case are:  Attempted murder in the second degree, assault in the second degree(Complainant Shireen Lyons); Kidnaping in the second degree(Complainant CHERYL

LYONS); Possession of a weapon in the second and fourth degree; and two counts of menacing in the second degree.

[d]  I appealed from the judgment of conviction.

[e]  The appeal resulted in my conviction being affirmed.

[f]  Further review was sought by applying for permission to appeal to the New York Court of Appeals was denied. (People v. Lowe, 99 N.Y. 2d 630[2003]).

19.  I do not have any future sentence to serve after I complete the sentence imposed by the judgment under attack herein.

WHEREFORE, Petitioner prays that this Court grant Petitioner relief to which he may be entitled in this proceeding.

I declare under penalty of perjury that the foregoing  is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on February  , 2012.

Executed on February 8 , 2012.

_____
Signature of Petitioner

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
X································X

CLEMENT LOWE,

                    Petitioner

          -against-

MARK BRADT, Superintendent,
Attica Correctional Facility,

                    Respondent.

The Attorney General of the
State of NEW YORK, ERIC T.
SCHNEIDERMAN.
X·······························X

**MEMORANDUM
PETITION FOR A WRIT OF
HABEAS CORPUS PURSUANT
TO 28 U.S.C.§2254**

1.  CLEMENT LOWE, Petitioner pro se, is presently incarcerated at

the Attica Correctional Facility, P.O. Box 149, Attica, New York,

14011, under D.I.N. 00-A-2910.

2.  Respondent, Mark Bradt, is the Superintendent of the Attica

Correctional Facility, and exercises immediate control of Petit-

ioner during this confinement.

3.  Petitioner brings the instant application seeking issuance of

a Writ of Habeas Corpus pursuant to 28 U.S.C. 2254, and the inst-

ant papers are in compliance with applicable rules governing such

Petitions.

4.  The procedural facts and underlying circumstances of the jud-

gment at issue are more fully set forth on the attendant applic-

ation form, and this Addendum is being included to present a more
                              *MEMORANDUM*

concise recounting of the constitutional errors which served to

undermine the judgment.

5.  Petitioner relies on the CPL §440.10 Motion to vacate judgme-

nt submitted pro se, in the lower court, in support of his argu-

(1)

ments addressed on this Petition.

GROUND   ONE

THE DECISION AND ORDER OF THE LOWER COURT IN THE
POSTJUDGMENT PROCEEDING WAS BASED ON (1): AN UN-
REASONABLE DETERMINATION OF FACTS(2): HAS RESTED
ON FACTS NOT IN EVIDENCE NOR OTHERWISE EXIST IN
LIGHT OF THE EVIDENCE PRESENTED(3): TAINTED EVI-
DENCE, AND (4) FUNDAMENTAL MISCARRIAGE OF JUSTICE
(U.S. Const. Amends. Vl And XlV).

For instance, in Kings County under Indictment # 9238/98, the

Petitioner was convicted, and was sentenced on March 22, 2000, to

a period of 22 years on attempted murder, the complainant  was

Shireen Lyons, 12 years on a kidnaping conviction, the complain-

ant was Cheryl Lyons, 12 years on criminal possession of a weapon

in the second degree.

In 2007, the Petitioner have obtained some legal documents in

regard to a deportation proceeding.  Such documents was served

upon the petitioner by Mr. Roach a Seinor Guidance Counselor at

the Attica Correctional Facility where the petitioner has  been

housed.  While petitioner was going over those legal papers, he

has unearthed a statement made by Cheryl Lyons to the arresting

police officer, that on September 9, 1998, from 8: 00 a.m.,until

12 noon the petitioner had kidnaped her in Brooklyn, Kings County

Meanwhile, the People in the instant case in Queens County
brought charges against petitioner under Indictment #3738/98,
that on September 9, 1998, throughout 8:00 a.m., until 11:00 a.m,
the Petitioner was in Far-Rockaway, Queens County raping  the
complainant Hollis Evertz.  Which is the same date and time that
Cheryl Lyons said that the petitioner have kidnaped her in Brook-
lyn, Kings County. [See, Petitioner's Exhibit"A" Newly Discover-
ed Evidence].

On December 15, 2008, the Petitioner have submitted a CPL. §
440.10 Motion to Vacate Judgment in the Queens County Supreme
Court, on grounds that the People have committed prosecutorial
misconduct by wrongfully disregarded Rosario material of  an
inscribe time period for the kidnaping of Cheryl Lyons on Septem-
ber 9, 1998, in Brooklyn, Kings County; Such an inscribe time
period was 8:00 a.m., until 12 noon, which was in the possession
of the People.


The petitioner further avered that the people should have been
aware that the petitioner could not conceivably have been  in
Far-Rockaway, Queens County at 8:00 a.m-11:00 a.m., on September
9, 1998, raping the complainant Hollis Evertz, and that had this
evidence was presented at trial, the outcome would have been
different.

(3)

After more than 15 months had elapsed and the People have
failed to respond to the petitioner's motion to vacate judgment.
Consequently, the petitioner have submitted a letter to the Que-
ens County Administrative Judge, informing him that the People
are unwilling to respond to the submitted CPL.§ 440.10 motion.

Approximately, two months later, the People have responded in
a motion dated May 28, 2010, and puts forth several allegations
that the Petitioner's newly discovered evidence that he was   in
Brooklyn, Kings County, from 8:00 a.m., until 12 noon on Septem-
ber 9, 1998, was not new evidence.  According to the people,such
evidence was Rosario material provided to petitioner's trial att-
orney Mr. Geral Arougheti at the commencement of the instant
trial.

Secondly, the People claimed that an assumption that  the
Prosecution have furnished defense counsel with the specific doc-
ument which stated that the petitioner was in Brooklyn, Kings
County from 8:00 a.m., until 12 noon on September 9, 1998,  is
founded on the minutes of the pretrial discussion of January 8,
2001, at page 22; and on the trial record at page 118-119,
(People's Moving Paper, Pages 10-11).  However, the People did
not submitted any of those records to support their claims.

(4)

As a consequence, the petitioner have replied to the People's motion, and have submitted page 22 of the pretrial discussion minutes of January 8, 2001, and the trial record of pages 118-119 which has also been submitted herein as [Petitioner's Exhibit D]. These records, of course, has absolutely no mention of the document consisting of the newly discovered evidence, nor does it contains any description in regard to the substance of the newly discovered evidence.

For instance, with respect to the pertinent portion of the pretrial minutes at page 22, of January 8, 2001, the Prosecutor have stated that she has intended to call some of the people from the Brooklyn case, and that she does not have to provide defense counsel with those paperwork because he has independent accessibility to get it on his own, but if defense counsel does not have them, she will give them to him.

Evidently, this statement by the prosecutor does not mention the name of the specific document consisting of the newly discovered evidence, nor does it referred to any of the information contains in the newly discovered evidence, that would suggest, as the people does, that an assumption can be found in such a statement on page 22 of January 8, 2001, as proof that the prosecution has furnished defense counsel with the newly discovered evidence in question.

(5)

Likewise, page 119 of the trial record at which point defense counsel mentioned that he had received a stock of Rosario mainly constituted minutes from the Brooklyn case, cannot be construed that the prosecution have furnished defense counsel with the newly discovered evidence. In that, page 119 of the trial record is a general statement which has completely failed to cite any degree of facts tending to prove that the newly discovered evidence was among any of the document that was given to defense counsel.

Additionally, the trial record at page 118 is irrelevant in that such a page 118 of the trial record has not contain even a scentilla of information in regard to the newly discovered evidence.

Moreover, no reasonable assumption can be drawn from the pre-trial, and trial transcripts of the Brooklyn case, that those transcripts might have provided defense counsel with the information that the time period of 8:00 a.m., until 12 noon, have been existed in regard to the kidnaping incident. Whereas, throughout the Brooklyn case, the record has absolutely no mention that the time period of the kidnaping of Cheryl Lyons in Brooklyn, Kings County, was from 8:00 a.m., until 12 noon on September 9, 1998.

(6)

Similarly, it cannot be gainsaid that Cheryl Lyons was a potential witness for the people at the time when the trial prosecutor make the announcement that she has intended to call some of the people from the Brooklyn case, and gave defense counsel the Rosario and trial minutes for those potential witnesses, so one could have reasonable say those Rosario at that point, might have included Cheryl Lyons' report that on September 9, 1998, she was kidnaped from 8:00 a.m., until 12 noon in Brooklyn.

In that, shortly after the prosecutor have made the announcement concerning the potential witnesses, and their Rosario, the prosecutor have provided the trial Court with the names of each individual whom she has plan to call as potential witnesses for the people. And, without a doubt, Cheryl Lyons was not included on that list as a potential witness.

For example, the trial Court read the names of each potential witness for the People, included those from the Brooklyn case, and have inquired from the jurys, if they were acquainted with any of those potential witnesses. The following are the names that constitutes the People's entire list of potential witnesses from the Brooklyn case that was given to the Court and read to the jurys: (1) Detective Pender,(2) Detective Basoa, (3) Detective Rodriques,(4) Detective Payne, (5) Police Officer Bryne, (6) Police Officer Higdon, (7) Police Officer Sandown, (8) Sergeant Falk, (9) Louis Zuppello, (10) Robin Cruz, and (11) Robert Ecker. [See, Petitioner's Exhibit E].

(7)

Finally, no reasonable assumption can be drawn that defense counsel might have received the petitioner's newly discovered evidence in the middle of the instant trial when on the People's direct case, the trial prosecutor have called Cheryl Lyons to testify on behalf of the People in regard to a gun. At which point the prosecutor have served defense counsel with a rap sheet concerning Cheryl Lyons, and there was no mention of the Petitioner's newly discovered evidence. (Cheryl Lyons' Testimony, Trial Transcript, Pages 386-391).


## QUEENS COUNTY SUPREME
## COURT DECISION AND ORDER


On June 26, 2010, the Queens County Supreme Court have denied the Petitioner's Motion to Vacate Judgment. The Decision and Order was that on the basis of the moving papers submitted by the petitioner, and the People, the Court finds that there were sufficient facts on the record for the petitioner to have raised this issue on direct appeal of his conviction. As such, Petitioner's claims are procedurally-barred. CPL. §440.10[2][C[. (Decision and Order, Page 2, Paragraph 3). [See, Petitioner's Exhibit B].


(8)

## UNREASONABLE DETERMINATION
## OF CLEARLY ESTABLISHED LAW

Indeed, the decision and order of the lower court, was respectfully, an unreasonable determination of clearly established Criminal Procedure Law Section 440.10[2][c].  In that, CPL. § 440.10[2][c], requires that there must be sufficient facts appeard on the record of the proceedings underlying the judgment  to have permitted, upon appeal from such judgment, adequate review of the issue raised upon the motion.

Whereas, in the present case, there are no facts that appeared on the record, to have permitted, upon appeal, adequate review of the newly discovered evidence raised in petitioner's motion to vacate judgment, that on September 9, 1998, it was from 8:00 a.m. until 12 noon the petitioner was in Brooklyn, Kings County. This error that was made by the lower court, have seriously undermine the fairness of the proceeding and have contributed to an unreasonable determination of clearly established law.

Error that seriously affect the fairness, integrity or public reputation of judicial proceedings, should no doubt be corrected, United States v. Atkins, 297, U.S. 157, 160, 56 S.Ct. 391(1936); Sawyer v. Whitley, 505 U.S.333, 112 S.Ct. 2514; Townsend v.Burky, 334 U.S.736, (1948) recognizes, due process requires that a convicted person not be held incarcerated on materially untrue, assumption or misinformation.

The United States Supreme Court has held that correction of an error not objected to below is appropriate where the error affecting substantial rights. <u>See</u>, <u>United States v. Olano</u>,507 U.S. 725, 732, 113 S.Ct. 1770; <u>United States v. Wells</u>, 163 F.3d 897; <u>United States v. Wilkinson</u>, 137 F. 3d 214.

Accordingly, the Petitioner respectfully ask that the relief requested in his Writ of Habeas Corpus be granted.

## FACTS NOT IN EVIDENCE
## NOR OTHERWISE EXIST

The decision and order of the lower court that the Petitioner's newly discovered evidence, is not new evidence, it is a criminal complaint filed in Brooklyn, charging the petitioner with attempted murder of Cheryl Lyons and that there were sufficient facts on the record for the petitioner to have raised such issue upon his direct appeal, but the petitioner have unjustifiable failed to, and as such his claims are procedurally-barred CPL.§ 440.10[2][c]. (Decision and Order, Page 2, Paragraph 4). Indeed, this decision and order was based on facts not in evidence nor otherwise exist.

(10)

For instance, there are no facts appeared on the record that
the petitioner has ever been charged with attempted murder  of
Cheryl Lyons, as erroneously determined by the lower court. Of
course, this error was a serious factor in the process by which
the lower court reaches its decision and order and denied  the
petitioner's motion to vacate judgment.  Given that the attempted
murder was on issue raised in an application by the People in the
trial Court, during which the people had sought to bring in
testimony from Shireen Lyons the complainant in the attempted
murder for which the petitioner have been convicted.

However, the trial Court ruled that it will not allowed such
testimony from Shireen Lyons to come in at-trial in the Queens
case.  (Trial Proceedings, Pages 8-12, January 8,2001).  The
trial Court was also specific in reference to Shireen Lyons that
she was the petitioner's former girlfriend, and that the charges
were attempted murder, and assault in the second degree. Thus,
the lower court have misapplied CPL. §440.10[2][c], and wrong-
fully denied the petitioner's motion to vacate judgment.  Such
inaccurate information upon which the lower court based its dec-
ision that Shireen Lyons and Cheryl Lyons are the same person
have prejudiced the petitioner.

It is well settled that, a court must assure itself that the
information upon which it based its decision is reliable  and
accurate. People v. Noranja, 89 N.Y.2d     ,659 N.Y.S. 2d 826;

<u>United States v. Pugliese</u>, 805 F. 2d 1117(2nd Cir.); <u>People v.</u>
<u>Outley</u>, 80 N.Y. 2d 702, 712.

## UNREASONABLE DETERMINATION OF FACTS

The decision and order of the lower court that the Petition-
er's newly discovered evidence, was not new evidence because
prior to the commencement of the instant trial, Mr. Arougheti
had received all Rosario, and Brady material and that the facts
of the Brooklyn case, of which the petitioner was convicted, were
well known to Mr. Arougheti and the People, but the people, on
their direct case, were directed by the trial Court not to men-
tion the facts of the Brooklyn case.  As such, petitioner's
claims are without merit. (Decision and Order, Page 2, Paragr-
aph 4, and Page 3, Paragraph 1).  Which is, of course, refuted
by the trial record.

For instance, in defense counsel's summation to the jury, he
pointed out that he had not known all the facts when he  begin
this case [See, Petitioner's Exhibit K].  Thus, the lower court
decision and order have rested on an unreasonable determination
of facts suggesting that prior to trial defense counsel was well
aware of the petitioner's newly discovered evidence, which is an
error that have affected substantial rights of the petitioner.

(12)

## TAINTED EVIDENCE
## AFFIDAVIT

Appended in the People's Moving Paper, was an affidavit, in which the affidavit claimed, inter alia, that it disagreed with the petitioner's claims of Rosario because prior to the commencement of trial, the defense had received all Rosario and Brady materials. [See, Petitioner's Exhibit C]. According to the People, the affidavit is from the petitioner's trial attorney Mr. Geral Arougheti. (People's Moving Paper, Page 43, Paragraph 1].

However, the said affidavit is consisted of three pages: At the upper left corner of page one, has displayed a discernable logo symbolizing the entity where the affidavit came from as well as the name of a representative from that entity.

(a): The name of the entity printed on the affidavit, was the Queens County District Attorney. Org.;

(b): The name and title of the representative from the Queens County District. Org., printed on the affidavit was Emil S Bricker Assistant District Attorney.

Additionally, page one of the said affidavit gives notice that a copy was sent via-e-mail to Petitioner's trial attorney Mr. Gerald Arougheti at a Bayview Loan Servicing. Com., and a copy to the petitioner Clement Lowe.

(13)

On the third page of the said affidavit, it warns that this e-mail affidavit contains privileged and confidential information from the Queens County District Attorney's Office, and that if anyone received it in error please notify the Queens County District Attorney's Office.  [See, Petitioner's Exhibit C].

## MISCARRIAGE OF JUSTICE

In spite of this clear and convincing evidence, the lower court should readily see that the affidavit, which is also tainted with a signature purportedly of Mr. Arougheti, did not come from Mr. Arougheti, nor Bayview Loan Servicing. Com. Instead, the affidavit was sent by the assistant district attorney Emil S. Bricker from the Queens County District Attorney's Office, to Mr. Arougheti at Bayview Loan Servicing. Com.

Nevertheless, the lower court summarily stated in its decision and order that the affidavit was from the petitioner's trial attorney Mr. Gerald Arougheti, and that the petitioner's newly discovered evidence was not new evidence because Mr. Arougheti had received all Rosario and Brady material prior to the commencement of the instant trial as alleged in the affidavit, and denied the petitioner's motion to vacate judgment. Obviously, the affidavit have formed the basis of the lower court's decision and order, which have substantially undermine the fairness of

the proceeding and contributed to the denial of petitioner's Due

Process Right.  U.S.  Const.  Amend.  XlV.

To comply with due process, it has been held that the Court

must assure itself that the information upon which it bases the

judgment is reliable and accurate.  Mempa v. Rhay, 389 U.S. 128,

133.

The Petitioner respectfully asked that the relief requested

in his Writ of Habeas Corpus be granted.

## POINT TWO

> **THE RULING OF THE LOWER COURT IN REGARD TO A**
> **CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL,**
> **WAS IN VIOLATION OF THE SUPREME COURT STAN-**
> **DARD SET FORTH IN STRICKLAND V. WASHINGTON**
> **WHICH DEPRIVED PETITIONER OF HIS CONSTITU-**
> **TIONAL RIGHT, AND DUE PROCESS OF LAW.  U.S**
> **CONST.  AMEND.  Vl and XlV.**

The decision and order of the lower court that the petitio-

ner's trial attorney Mr. Geral Arougheti have provided meaning-

ful representation to petitioner.  Is contrary to the ruling set

forth in the established federal standard of review for claims of

constitutionally ineffective assistance of counsel, as announced

by the Supreme Court in Strickland v. Washington, 466 U.S. 668,

687 (1984), requires that a court examine both the deficiency in

counsel's performance, and also the prejudice resulting  from

counsel's ineffectiveness.

(15)

In the present case, the ruling of the lower court that it was Mr. Arougheti's affidavit which claimed (a): That one of the most important discovery in this case, was when the Queens County police had broke open the petitioner's lock briefcase and found a cellular phone inside the briefcase, and (b): That he had received the petitioner's newly discovered evidence prior to the commencement of trial.

Such an affirmation by defense counsel that he was in posse-ssion of those two pieces of evidence at trial, have clearly shown that he had engaged in an inexplicably prejudicial course of conduct, as opposed to merely misguided tactical errors, thr-oughout petitioner's trial for rape, the cumulative effect of which was to deprive petitioner of effective assistance of coun-sel and his right to a fair trial.

(A):  For instance, at trial the complainant Hollis Evertz have testified that the petitioner had told her that he was going to Kill Shireen Lyons in Brooklyn, Kings County, and at 8:22 a.m. 8: 30 a.m., and 9:30 a.m., on September 9, 1998, the petitioner have made phone calls and gave her the phone to ask for Shireen Lyons, and according to Ms. Evertz after petitioner have made the phone calls, he locked that phone in his combination lock briefc-ase, and that it was the one and only phone in the petitioner's apartment.

(16)

According to Ms. Evertz, while she was left alone in the petitioner's apartment, she did not have access to call the police and report that she was raped, and the apartment door was locked and need a key for her to get out. (Evertz's Testimony, Trial Transcripts Pages 550-689)

## Trial  Evidence:

At trial, the people have presented a Verizon Phone Company Billing Record for services that Verizon have provided on September 9, 1998, to a landline telephone (718)337-1011 attached to the petitioner's apartment in Far-Rockaway, Queens County.  The Billing Record shows that at 8:22 a.m., 8:30 a.m., and 9:30 a.m., three phone-calls were made on September 9, 1998, from the said landline telephone (718)337-1011.

## Petitioner's Trial Testimony:

The Petitioner testified at trial that, on September 9, 1998, he has two telephone in his Queens apartment, and that one of the phone was a landline, and the secod phone was a portable(Cellular) phone, and that he has kept the portable (Cellular) phone locked inside his briefcase, but the landline phone was never locked inside his briefcase [See, Petitioner's Exhibit G], and that he has never made those phone calls on September 9, 1998.

(17)

## Summation:

During summation, defense counsel have pointed out to the jurys that the people has not supplied him with any evidence in regard to what the police had found inside the petitioner's briefcase when they broke it open    [See, Petitioner's Exhibit H]

Meanwhile, the prosecutor in her summation, has reminded the jurys that on September 9, 1998, there was only one telephone which was (718) 337-1011 that was inside the petitioner's Queens apartment, and that the said landline phone was locked inside the petitioner's combination briefcase that was broke open by the Queens County Police.  [See, Petitioner's Exhibit I].

## Affidavit:

Stunningly, the affidavit which the lower court have ruled that it came from the petitioner's trial attorney Mr. Arougheti, have revealed that at the time when Mr. Arougheti had told the jurys that the people did not supply him with any evidence from the briefcase, he was in fact furnished with such evidence that it was a cellular phone the police had found inside the briefcase when they had broke it open.  Thus, defense counsel have knowing-ly, and intelligently lied to the trial jurys.

Whereas, had defense counsel brought it to the jurys' atten-tion that when the police had broke open the petitioner's briefc= ase, it was a cellular phone the police had found inside  the

briefcase.  First, it would have corroborated the petitioner's
testimony that his landline telephone (718) 337-1011, was never
locked inside his briefcase, it was available to Ms. Evertz while
she was at his apartment, and that he had never told  Ms. Evertz
that he was going to kill anyone in Brooklyn, nor did he made any
phone calls during the period of 8:22 a.m., and 9:30 a.m.,  and
gave any phone to Ms. Evertz to ask for Shireen Lyons.

Secondly, if defense counsel had disclosed to the jury  that
it was a cellular phone the police had found inside the briefcase
in question, it would have highlighted the implausibility of the
People's case, that the Billing Records from Verizon Phone Com-
pany for the landline phone (718) 337-1011, was calculated evide-
nce presented to misguide the jury from knowing the truth that on
September 9, 1998, while Ms. Evertz was left alone for several
hours in the petitioner's apartment, she had full access to  the
said landline phone (718) 337-1011, and she has made those phone
calls between the hours of 8:22 a.m-9:30 a.m., on September 1998,
and the reason why she did not call the police, was that she was
never raped nor in any danger.

This evidence make a clear and convincing showing of the
lower court decision and order that defense counsel have effect-
ively represented the petitioner at trial, was contrary to clear-
ly established Federal Law, as determined by the Supreme Court of

the United States of America set forth in Strickland v. Washington, supra.

Where a State obtains a criminal conviction in a trial in which the accused is deprieved of the effective assistance of counsel, the State unconstitutionally deprieves the defendant of his liberty, Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708.

In the present case, the petitioner is thus in custody, in violation of the constitution, 28 U.S.C. §2254. Wherefore, the petitioner respectfully, ask this Court to grant his Habeas Corpus relief.

## (B): Counsel Failed to Investigate.

For instance, the complainant Hollis Evertz have testified that throughout the morning of September 9, 1998, the petitioner was at 1217 Norton Drive in Far-Rockaway, Queens County raping her. On defense counsel's cross-examination of Ms. Evertz, defense counsel asked her about the timeline of petitioner's departure from the Queens apartment, and when Ms. Evertz hesitated to answer the question, defense counsel confronted her with her Grand Jury Testimony, that the petitioner's departure from the apartment at 1217 Norton Drive, Far-Rockaway, Queens County, was 11:00 a.m., on September 9, 1998. (Evertz's Testimony, 'Trial Minutes, Pages 655-689).

(20)

Thereafter, the People have called Cheryl Lyons who was the person that have made the statement that the petitioner had kidnaped her on September 9, 1998, from 8:00 a.m., until 12 noon in Brooklyn, Kings County. While Cheryl Lyons was on the witness stand, the prosecution have elicited testimony from her regarding a gun that she allegedly saw the petitioner with in Brooklyn, Kings County on September 9, 1998. According to the people, the petitioner had used that gun to intimidate the Queens County complainant Hollis Evertz.

On defense counsel's cross-examination of Cheryl Lyons, the only question that defense counsel had asked Cheryl Lyons with respect to her testimony, was whether she has any criminal record. (Cheryl Lyons' Testimony, Trial Minutes, Page 287).[Petitioner's Exhibit J]. Here, defense counsel have failed to investigate from Cheryl Lyons as to what time period did she saw the petitioner in Brooklyn, Kings County on September 9, 1998.

Essentially, the case against petitioner hinged crucially on the testimony of the complainant Hollis Evertz. At the same time defense counsel have attempted to lay the foundation that the complainant have given testimony at the Grand Jury that throuhought the morning of September 9, 1998, the petitioner have raped her and that at 11:00 a.m., the same morning the petitioner have

(21)

left her in the Queens apartment and went to Brooklyn, Kings
County. Such an illustration by defense counsel, was an indi-
cation that the time period of which the complainant have claimed
that the rape was happening, and the time period when the petit-
ioner was in Brooklyn, Kings County, was pivotal evidence in the
Queens case for the defense.

However, defense counsel have made it clear by his admission
in the affidavit that before the start of the instant trial, he
had possessed evidence of the time period 8:00 a.m., until 12
noon which was when the kidnaping incident started and ended on
September 9, 1998, in Brooklyn, Kings County, also evidence of
the time period when the Queens County complainant Hollis Evertz
alleged that the rape happened on September 9, 1998, in Far-Rock-
away, Queens County, whereby these two evidence have contrast
each other.

In this regard, it is important to remember that one year
prior to the Queens County trial, the petitioner was convicted
in Brooklyn, Kings County for the kidnaping incident, which de-
fense counsel was aware of, yet, defense counsel have deliberat-
ely refused to investigate and bring to the jurys' attention
this key piece of evidence in his possession that the petitioner
was in Brooklyn, Kings County from 8:00 a.m., until 12 noon on
September 9, 1998.

(22)

Whereas, if the omitted evidence was employed by defense counsel at trial, it would have outweigh any prejudice that might have derived from the jurys knowing that the petitioner was conv- icted in Brooklyn, Kings County. Instead, the jury would have left with one question, which is, was it possible for the petit- ioner who does not own, nor rented an airplane on September 9, 1998, to have been in Far-Rockaway, Queens County, and Brooklyn, Kings County, which is about 75 mile from each other, at the same date and time? The answer, is no. Thus, the outcome at trial would have been different.

Therefore, the ruling of the lower court that the facts of the Brooklyn case, was well known to the People and defense coun- sel but they were advised by the trial Court to stay away from the underlying facts for which the petitioner have been convic- ted, and that defense counsel have effectively served the Petit- ioner at trial. Indeed, such a ruling was a miscarriage of just- ice as well as it is in conflict with the ruling of the United States Supreme Court in <u>Strickland v. Washinton</u>, <u>supra</u>, which requires that a court should examine both the deficiency in counsel's performance, and also the prejudice resulting from counsel's ineffectiveness.

<u>Hart v. Gomez</u>, 174 F.3d 1067, 1071(9th Cir.1999), holding that counsel provided constitutionally ineffective assistance where, inter alia, having chosen to pursue a particular line of defense, counsel did not introduce readily-available evidence

(23)

that would have corroborated that line of defense, and there was
no plausible strategic reason for his not introducing the evide-
nce. Similarly, in the instant case, defense counsel failed to
introduce readily available evidence that would have corrobora-
ted his line of defense.

A single error is qualify as ineffective assistance of couns-
el where the error is sufficiently egregious and prejudicial as
to compromise a defendant's right to a fair trial. People v.
Cuban, 5 N.Y. 3d at 152, People v. Cypres, 48, A.D. 3d 150. In
the present case, there are several errors which are egregrious
and prejudicial and have compromise petitioner's right to a fair
trial.

The Court have held in William v. Taylor, 529 U.S. 362, 395,
that a decision based on a legal misunderstanding was not anim-
ated by strategic calculation. In the present case, the decision
and order of the lower court was based on a legal misunderstand-
ing that if defense counsel had presented legally permissible
evidence such as the inscribe time period when the petitioner was
in Brooklyn, Kings County, counsel would not in compliance of the
trial Court's ruling that he is to stay away from the underlying
facts of the Brooklyn case.

(24)

Undoubtedly, the decision and order of the lower court, was wrong that a review of the record clearly shows rthat, under the totality of circumstances, defendant received meaningful representation from his trial attorney Mr. Arougheti(Decision and Order, Page 3, Paragraph 2).

WHEREFORE, Petitioner respectfully ask that the relief requested in his Application for a Writ of Habeas Corpus be granted.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on February 8 , 2021.

CLEMENT LOWE
PETITIONER, PRO SE
P.O. BOX 149
ATTICA, N.Y. 14011-0149

(25)

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR   COUNTY OR KINGS

THE PEOPLE OF THE STATE OF NEW YORK       >
                                           >
              V.                           >         STATE OF NEW YORK
                                           >         COUNTY OF KINGS
   CLEMENT LOWE                             >
                                           >
        DEFENDANT                          >
                                           >

F. EVANS PAYNE OF TB-BKTF, SHIELD 9859 SAYS THAT ON OR ABOUT
   (1) SEPTEMBER 9, 1998 AT APPROXIMATELY 8:00AM AND 12:00PM AT CORNER OF
       FULTON STREET BETWEEN WAVERLY STREET AND WASHINGTON AVENUE, COUNTY OF
       KINGS, STATE OF NEW YORK,

            THE DEFENDANT COMMITTED THE OFFENSES OF:
            PL 120.14-1          MENACING IN THE SECOND DEGREE
            PL 135.10            UNLAWFUL IMPRISONMENT IN THE FIRST DEGREE
            PL 135.20            KIDNAPPING IN THE SECOND DEGREE
            PL 135.25-1          KIDNAPPING IN THE FIRST DEGREE
            PL 265.01-2          CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH
                                 DEGREE

D THAT ON OR ABOUT                              98K074742
   (2) SEPTEMBER 9, 1998 AT APPROXIMATELY 12:30PM AT 770 FULTON STREET,
       COUNTY OF KINGS, STATE OF NEW YORK,

            THE DEFENDANT COMMITTED THE OFFENSES OF:
            PL 120.14-1          MENACING IN THE SECOND DEGREE
            PL 265.01-2          CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH
                                 DEGREE

D THAT ON OR ABOUT
   (3) SEPTEMBER 9, 1998 AT APPROXIMATELY 1:15PM AT 625 ATLANTIC AVENUE,
       COUNTY OF KINGS, STATE OF NEW YORK,

            THE DEFENDANT COMMITTED THE OFFENSES OF:
            PL 110/125.20-1      ATTEMPTED MANSLAUGHTER IN THE FIRST DEGREE
            PL 110/125.25-1      ATTEMPTED MURDER IN THE SECOND DEGREE
            PL 120.00-1          ASSAULT IN THE THIRD DEGREE
            PL 120.05-1          ASSAULT IN THE SECOND DEGREE
            PL 120.05-2          ASSAULT IN THE SECOND DEGREE
            PL 120.10-1          ASSAULT IN THE FIRST DEGREE
            PL 265.01-1          CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH
                                 DEGREE
            PL 265.01-2          CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH
                                 DEGREE
            PL 265.02-4          CRIMINAL POSSESSION OF A WEAPON IN THE THIRD
                                 DEGREE
            PL 265.03            CRIMINAL POSSESSION OF A WEAPON IN THE SECOND
                                 DEGREE AFO

THAT THE DEFENDANT DID:     RESTRAIN A PERSON UNDER CIRCUMSTANCES
ICH EXPOSED THAT PERSON TO A RISK OF SERIOUS PHYSICAL INJURY;
DUCT A PERSON; ABDUCT A PERSON WITH INTENT TO COMPEL A THIRD PERSON
 ENGAGE IN OR REFRAIN FROM PARTICULAR CONDUCT (AS SPECIFIED BELOW);
TH INTENT TO CAUSE PHYSICAL INJURY TO ANOTHER PERSON, CAUSE SUCH
JURY TO SUCH PERSON OR TO A THIRD PERSON; WITH INTENT TO CAUSE
RIOUS PHYSICAL INJURY TO ANOTHER PERSON; HE CAUSES SUCH TO SUCH
RSON OR TO A THIRD PERSON; INTENTIONALLY CAUSE SERIOUS PHYSICAL
JURY BY MEANS OF A DEADLY WEAPON OR DANGEROUS INSTRUMENT;
TENTIONALLY PLACE OR ATTEMPT TO PLACE ANOTHER PERSON IN REASONABLE
AR OF PHYSICAL INJURY, SERIOUS PHYSICAL INJURY OR DEATH BY
SPLAYING A DEADLY WEAPON, DANGEROUS INSTRUMENT OR WHAT APPEARS TO
 A PISTOL, REVOLVER, RIFLE, SHOTGUN, MACHINE GUN OR OTHER FIREARM;
TH INTENT TO CAUSE PHYSICAL INJURY TO ANOTHER PERSON, CAUSE SUCH
JURY TO SUCH PERSON OR TO A THIRD PERSON BY MEANS OF A DEADLY
APON OR A DANGEROUS INSTRUMENT;; POSSESS A WEAPON; POSSESS A WEAPON

CONTD NEXT PAGE

WITH INTENT TO USE IT UNLAWFULLY AGAINST A PERSON; POSSESS A LOADED
FIREARM; POSSESS A MACHINE GUN OR LOADED FIREARM (AS SPECIFIED BELOW)
WITH INTENT TO USE IT UNLAWFULLY AGAINST A PERSON; ATTEMPT TO CAUSE
THE DEATH OF A PERSON, WHILE ACTING WITH THE INTENT TO CAUSE SERIOUS
PHYSICAL INJURY; AND ATTEMPT TO INTENTIONALLY CAUSE THE DEATH OF A
PERSON.

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S
BELIEF ARE AS FOLLOWS:

    THE DEPONENT IS INFORMED BY CHERYL LYONS THAT, AT THE FIRST
ABOVE TIME AND PLACE, THE DEFENDANT DID FORCE INFORMANT INTO THE
DEFENDANT'S VEHICLE BY POINTING A FULLY LOADED AUTOMATIC TECH-9
MACHINE GUN AND THREATENED TO SHOOT INFORMANT WHILE DEMANDING THAT
INFORMANT DISCLOSE THE WHEREABOUTS OF INFORMANT'S SISTER, SHIREEN
LYONS, AND DID DRIVE INFORMANT AGAINST INFORMANT'S WILL TO THE SECOND
AND THIRD ABOVE LOCATIONS WITHOUT INFORMANT'S CONSENT, THEREBY
PLACING INFORMANT IN REASONABLE FEAR OF PHYSICAL INJURY.
    DEPONENT IS FURTHER INFORMED BY RESSELL LYONS THAT AT THE SECOND
ABOVE TIME AND PLACE, THE DEFENDANT DID POINT A LOADED AUTOMATIC
TECH-9 MACHINE GUN AT INFORMANT AND THREATENED TO KILL INFORMANT
THEREBY PLACING INFORMANT IN REASONABLE FEAR OF PHYSICAL INJURY.
    DEPONENT IS FURTHER INFORMED BY SHIREEN LYONS THAT AT THE THIRD
ABOVE TIME AND PLACE, THE DEFENDANT REPEATEDLY STABBED INFORMANT IN
THE NECK, CHEST, SHOULDER AREA THEREBY CAUSING INFORMANT TO SUSTAIN
MULTIPLE LACERATIONS TO THE NECK AREA REQUIRING APPROXIMATELY OVER
TWENTY (20) STITCHES AND REQUIRING INFORMANT TO BE ADMITTED TO A
HOSPITAL AND SUFFER SUBSTANTIAL PAIN AS A RESULT THEREOF.
    DEPONENT IS FURTHER INFORMED BY DEFENDANT'S OWN STATEMENTS THAT
AT THE FIRST AND SECOND ABOVE TIMES AND PLACES, THE DEFENDANT WAS IN
POSSESSION OF A LOADED AUTOMATIC MACHINE GUN.
    DEPONENT IS FURTHER INFORMED BY POLICE OFFICER HIGDONE, SHIELD
NUMBER 1267, THAT INFORMANT RECOVERED A LOADED AUTOMATIC MACHINE GUN
FROM THE DEFENDANT'S VEHICLE.

                    FALSE STATEMENTS MADE IN THIS DOCUMENT ARE
                    PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT
                    TO SECTION 210.45 OF THE PENAL LAW.

                    09-10-98        P.O.  Quis  Payn 9869
                    _____        _____
                    DATE               SIGNATURE

PETITIONER'S EXH "B"

MEMORANDUM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS : CRIMINAL TERM : PART K-9

------------------------------------------x
                                           :
THE PEOPLE OF THE STATE OF NEW YORK        :    BY:  LATELLA, J.
                                           :
                                           :
            -against-                      :    INDICT. NO.: 3738/98
                                           :
CLEMENT LOWE,                              :    DECISION AND ORDER
                                           :
                     Defendant.            :
                                           :
------------------------------------------x

         On February 13, 2001, defendant, Clement Lowe, was

convicted, after a jury trial, of two counts of Rape in the First

Degree, three counts of Sodomy in the First Degree, one count of

Criminal Possession of a Weapon in the Second Degree, and one count

of Unlawful Imprisonment in the Second Degree, and was sentenced,

to concurrent terms of imprisonment of fifteen years on the rape

and sodomy convictions, ten years on the weapons conviction, and

one year on the unlawful imprisonment conviction by this Court.

Defendant's conviction was affirmed on appeal, People v. Lowe, 309

AD2d 877 (2d Dept. 2003), and leave to appeal to the Court of

Appeals was denied. People v. Lowe, 2 NY3d 752 (2004).

         Defendant now moves to vacate this judgment, claiming

that a new trial should be ordered on the basis of newly-discovered evidence and ineffective assistance of counsel.

The People contend that defendant's motion should be denied because all of his claims are procedurally barred. See CPL § 440.10[2][c]. Moreover, the People contend that his claims are without merit. On the basis of the record submitted by defendant and the moving papers submitted by the parties, the Court finds that defendant's claims are without merit and denies his motion to vacate the judgment.

As an initial matter, the Court notes that, as to each of defendant's present claims, there were sufficient facts on the record to have raised each issue on direct appeal of his conviction. As such, his claims are procedurally-barred. CPL § 440.10[2][c].

Turning to the merits, defendant claims that his conviction should be vacated and a new trial granted based on newly discovered evidence, that being a criminal court complaint filed in Brooklyn charging defendant with the attempted murder of Cheryl Lyons shortly after the rape of Hollis Evertz of which he was convicted in Queens. The evidence, however, is not newly discovered. The facts and circumstances of the Brooklyn case were well known to Mr. Gerald Aroughetti, Esq., defendant's attorney, as

well as to the People, prior to the commencement of the trial. Indeed, the People, on their direct case, were directed by this Court not to mention the facts of the Brooklyn case of which defendant was convicted. Defendant, however, against the advice of his counsel, testified at trial about the Brooklyn matter. As such, defendant's claim is without any merit.

Second, defendant claims that he did not receive effective assistance of counsel at trial. It is well-settled that, in order to establish ineffective assistance of counsel, defendant must first demonstrate that his counsel's performance was so deficient that his counsel was not functioning within the meaning of the Sixth Amendment of United States Constitution, and that his counsel's deficient performance prejudiced him. See Strickland v. Washington, 466 US 668 (1984). In this case, defendant has failed to show either that his counsel was deficient or that he was prejudiced at trial. A review of the record clearly shows that, under the totality of circumstances, defendant received meaningful representation from Mr. Aroughetti at trial. See People v. Benevento, 54 NY2d 137 (1981). Counsel fully cross-examined the People's witnesses, presented a defense case, delivered a forceful summation to the jury, and made all appropriate legal arguments during the trial and after the verdict.

3

Defendant claims, specifically, that his attorney failed to investigate the existence of a taped telephone conversation between himself and the complainant. Other than defendant's claim, there is no evidence that this taped conversation exists. Moreover, Mr. Aroughetti's affidavit clearly states that he never had any conversation with the defendant about this tape and that he received all Rosario and Brady materials prior to the commencement of trial. Other than defendant's own statement, there is no other evidence of this purported tape, and as such, defendant's claim is wholly without basis.

Lastly, defendant claims that his attorney failed to elicit at trial that defendant bought a briefcase on the morning of September 9, 1998. As explained by Mr. Aroughetti in his affidavit, this fact would not have supported the defense of consensual sex nor would it have refuted any of the People's evidence with respect to the recovery of a gun and cell phone. Indeed, evidence of defendant's purchase of a briefcase on the morning after he left the apartment in which he had raped Hollis Evertz would have supported the People's claim that he left his own briefcase behind. Therefore, defendant's claim is without merit.

For the reasons stated above, defendant's motion to

4

vacate the judgment is, in all respects, denied.  This constitutes

the decision and order of this Court.

Dated:      Kew Gardens, New York
            June 24, 2010

JOHN LATELLA, A.J.S.C.

HON. JOHN B. LATELLA

5

PETITIONER'S EXHIBIT "C"



"Emil Bricker"
<ESBricker@queensda.org>
05/26/2010 03:43 PM

To  <GeraldArougheti@bayviewloanservicing.com>
cc
bcc
Subject  Re: Clement Lowe Affidavit

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS : CRIMINAL TERM, PART K-9
------------------------------------------------x  Return Date:
THE PEOPLE OF THE STATE OF NEW YORK, : May 28, 2010
    AFFIDAVIT IN
     : OPPOSITION TO
  Respondent,  DEFENDANT'S
     : MOTION TO
     VACATE
  -against- : JUDGMENT

CLEMENT LOWE,   : Queens County
    Indictment
     : Number
  Defendant-Appellant.  3738/98
------------------------------------------------x

State of New York)
   : ss.
County of Queens )

 GERALD AROUGHETI, a retired attorney, having practiced Criminal Law in
New York State for approximately thirty years at the time of trial, who was at that
time admitted to practice in the State of New York, swears that the following
statements are true under the penalties of perjury:

 1. I was trial counsel to defendant Clement Lowe in his prosecution for rape and
kidnaping under Queens County Indictment Number 3738-98.
 2. In that capacity, I investigated my client's potential defenses and prepared a
defense strategy that was later badly undermined by my client's own testimony,
when he chose to take the stand.
 3. The People's case against Mr. Lowe had all along been extremely strong,
consisting chiefly of the rape victim's testimony, the testimony of police who
were forced to break down the door to Mr. Lowe's apartment, to rescue her, and

the seizure from my client's car of the weapon that my client had used to subdue her.

4. I have reviewed Mr. Lowe's current motion in this matter, and have also reviewed lengthy a summary of trial events, which has refreshed my recollection of many of the particulars of the case. I have additionally reviewed a copy of the pre-trial Omnibus Motion that I filed in this case. As a result, my remembrance of the events of the criminal proceeding is good.

5. I worked closely with my client during the course of criminal proceedings, and learned from him critical details and issues of fact. Defendant was constantly advised of the status of the cse and was supplied with copies of all pleadings, court decisions, etc.

6. During my lengthy discussions of the case with my client, he never told me, or so much as hinted, that the People were in possession of audio-tapes memorializing his telephone conversations with the crime victim; nor, during the course of criminal proceedings, did I have any reason to believe that such tapes existed. I therefore never had any reason to believe that I should particularly seek to obtain any such tapes from the People, during pre-trial discovery.

7. Nonetheless, in pre-trial proceedings on this case, I did prepare and filed an extensive Omnibus Motion on Mr. Lowe's behalf, demanding, inter alia, relevant discovery and Brady material. Had the People actually possessed any tapes of telephone conversations between my client and the victim, these requests would have required them to produce any such items. None were produced.

8. I did timely receive full discovery from the People, during this case, and discussed all of that discovery with my client. My remembrance of having received this material leads me to disagree entirely with Mr. Lowe's claim of Brady or Rosario failure.

9. I never received from the People any tapes of conversations between my client and the victim, during discovery, nor do I now have any reason – despite my client's present claims – to believe that such tapes existed, or had been in the People's possession during the criminal proceedings.

10. Though Mr. Lowe also argues that I served him ineffectively by failing to raise the claim that he had bought a briefcase in Brooklyn, during the course of September 9, 1998, his argument makes little sense to me. One of the important issues in the trial was the seizure by Brooklyn police of the weapon that Mr. Lowe had used to intimidate the Queens rape victim. Another was the discovery by Queens police of a cellular telephone locked into a briefcase in Mr. Lowe's Queens apartment – a briefcase that the police eventually broke open. Mr. Lowe now argues to the Court that, had I demonstrated to the jury that Mr. Lowe had bought a briefcase in Brooklyn on September 9, 1998 – the day of his arrest – that

proof would have sapped all the strength of the People's case. But in fact any purchases by Mr. Lowe in Brooklyn on that day would not have negated the presence of the cellular telephone in the locked Queens briefcase, or of the large handgun seized by Brooklyn police from his jeep.

11. The Queens crime was committed prior to the Brooklyn crime. The Queens complainant testified that at the time of her release by the police, she notified them that Mr. Lowe was going to Brooklyn to harm his ex-girlfriend and that he had a weapon, which she later identified to the police. The fact that this testimony could be corroborated by subsequent events in Brooklyn (i.e., by defendant's arrest at the location where his ex-girlfriend was; his possession of the weapon identified by the Queens complainant, etc.), would be damaging to our defense theory – which was that the sex in Queens was consensual and innocent and was not a crime.

12. I believe that motions were addressed to the trial judge, directing the D.A. not to be permitted to go into the Kings County matters. The defendant's testifying to the Kings County matter severely undermined the consensual nature of our defense.

13. I did a good a job while defending Lowe during this trial. I do not believe that I overlooked any viable defense, nor strategy.

Respectfully submitted,

*Gerald Arougheti*

Gerald Arougheti

Sworn to me this **26** day of **May**, 2010

_____, Notary Public

JENNIFER CHIN
MY COMMISSION # DD 957482
EXPIRES: May 30, 2014
Bonded Thru Notary Public Underwriters

This e-mail communication and any files transmitted with it contain privileged and confidential information from the Queens County District Attorney's Office and is intended solely for the use of the individual(s) or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please delete it and notify the sender by return e-mail.

1      trial that occurred in Brooklyn.

2              Some of the People's witnesses have

3      testified. I do not believe that is Rosario. There is

4      case law to support that position that defense counsel

5      had independent accessibility to that paperwork, so

6      therefore they could get it on their own.

7      Mr. Arougheti is uncertain at this time whether he has

8      it in his possession. If he does not then we can make

9      the appropriate copy, if necessary, Judge, but we will

10     not do that at this time unless he tells us he needs

11     it.

12             MR. AROUGHETI: I will bring in my entire

13     file tomorrow and show her what I have so she could

14     determine what I have and don't.

15             THE COURT: That's fine. Then we're going to

16     have to take at least a half hour break. The jury

17     panel is not even ready yet. I don't anticipate

18     they'll be brought over before 11:30, so if you have

19     any other matters to attend to, that you do it between

20     now and 11:30 and be back here at 11:30.

21             MR. AROUGHETI: Yes.

22             (Whereupon, a recess was taken.)

23             (After the recess the following occurred.)

24             COURT CLERK: Recall case on trial, Clement

25     Lowe.

1       indicate for the record that we've attempted to reach

2       out to Miss Michaelson.  She's apparently in court but

3       not presently available.  I have the jury waiting to be

4       given this matter.  We've spent two days of jury

5       selection.

6               With respect to statements that Miss

7       Michaelson may have made at arraignments, as I

8       indicated, they are fully available for the People for

9       cross-examination should Mr. Lowe testify on his own

10      behalf in this case.  With respect to their

11      admissibility on the direct case, as I indicated that

12      issue has not yet been resolved because of the fact

13      that the Court feels that some factual development is

14      necessary in the testimony of Miss Michaelson with

15      respect to her understanding with Mr. Lowe at the time

16      of arraignment.

17              In light of that and in light of the fact

18      that Mr. Arougheti was only made aware of the People's

19      intention to use these statements when we were in the

20      process of selecting the jury in this case, I'm going

21      to preclude the use of that portion of the statement

22      which concerns the possession of the gun by Mr. Lowe

23      for his own protection.

24              Should the Court ultimately decide if Miss

25      Michaelson is called to testify in limine, that the

                                                            LM

1    balance of the statement is properly admissible as

2    adopted admission, obviously the People would be

3    allowed to introduce that portion of the statement in

4    their direct case.

5           With respect to that portion of the statement

6    dealing with the possession of the gun alone, I will

7    direct that it be precluded in the People's direct case

8    and only admissible or usable for purposes of

9    cross-examination, should Mr. Lowe take the stand.

10          MR. AROUGHETI:  That would be after a hearing

11   in which Miss Michaelson would testify?

12          THE COURT:  Yes.

13          MR. AROUGHETI:  One other procedural,

14   actually, two.  The Court can see that the D.A.

15   provided me with certain Rosario material yesterday.  I

16   was in her office 7 o'clock and she was nice enough to

17   give me a whole stack of material.  In addition, she

18   handed me a whole stack of material, most of which

19   constitutes minutes.  The D.A. was nice enough to tell

20   me she anticipated calling Officer Payne first.  So,

21   all I am asking is for when we finish the opening

22   arguments, before she calls her first witness, Officer

23   Payne, I be given some time to at least read just

24   Officer Payne's portion of whatever.

25          MS. DALY:  if we're going to wait for

LM

1    consulting business?

2                    THE PROSPECTIVE JUROR:  Yes.

3                    THE COURT:  Any objection to Miss Hartglass

4    being excused?

5                    MR. AROUGHETI:  No.

6                    MS. DALY:  No.

7                    COURT CLERK:  James Spencer.

8                    THE COURT:  Good afternoon, again, anyone

9    else in the second row with pressing family or business

10   obligations?

11                   All right.  Now, I already had the parties

12   introduce themselves to you.  Do any of you recognize

13   any of the parties to this action, the attorneys,

14   Mr. Lowe or feel that you're familiar with any of the

15   parties?

16                   At this time I'm going to read the names of

17   witnesses who may be called to testify in the trial of

18   this matter.  I want to advise you before I do that

19   that by my mentioning a name at this time, that imposes

20   no obligation on either party to call a particular

21   person as a witness.  However, I want to mention the

22   names of potential witnesses at this time to determine

23   whether any of you feel that you are acquainted with

24   any of the people whose names I mentioned.

25                   We believe the following people may be called

                                                              LM

PETITIONER'S EXHIBIT "E"

Proceedings

40

1          as witnesses at trial:  Robert Ecker.  Robin Cruz.

2     Louis Zuppello.  Theon Williams.  Susan Priestley.

3     Maureen Dean.  Hollis Evertz.  Mr. Levine.

4     Dr. Prophette.  Rolston Keene.  Detectives Carrano and

5     Payne.  Police Officer Byrne.  Detective Pender.

6     Sergeant Falk.  Police Officers LoBono, Higdon.

7     Detective Basoa.  Police Officer Sandou.  Police

8     Officer Staffa.  Detective Locker, Sergeant LaPera.

9     Larry Quintano.  Eileen Treacy.  Mr. Brewster.

10    Detective Rodriguez.  Alvin Stephenson.

11              Do any of you feel that you recognize the

12    names of any of those potential witnesses as people

13    with whom you're acquainted?

14              Now, before coming into court today, had any

15    of you heard or read anything about this case?

16              Let me advise you that as I indicated the

17    nature of the charges are that Mr. Lowe is accused of

18    having committed the crimes of rape and sodomy, as well

19    as criminal possession of a weapon and unlawful

20    imprisonment, and these charges are contained in an

21    indictment, which is what had been brought against

22    Mr. Lowe by the grand jury of Queens County.  I want to

23    advise you at this time that an indictment is merely an

24    accusation.  It is in no way evidence of any of the

25    allegations that it contains.  An indictment is merely

LM

PETITIONER'S EXHIBIT "F"



STATE OF NEW YORK
## UNIFIED COURT SYSTEM
### ELEVENTH JUDICIAL DISTRICT, SUPREME COURT
(OFFICE OF COURT ADMINISTRATION)
125-01 QUEENS BOULEVARD
KEW GARDENS, NEW YORK 11415
(718) 298-1540

**FERNANDO M. CAMACHO**
Administrative Judge
Criminal Term
Eleventh Judicial District
Supreme Court

**JENEEN M. WUNDER**
Principal Law Clerk
To Administrative Judge

March 31, 2010

Mr. Clement Lowe
00-A-2910
Attica Correctional Facility
P.O. Box 149
Attica, N.Y. 14011

Dear Mr. Lowe,

I have been asked by Administrative Judge Camacho, as his Principal Law Clerk, to respond to your correspondence, dated August 10, 2009, regarding Queens County Indictment No. 3738/98. Your letter, along with your pro se application pursuant to **Criminal Procedure Law § 440**, have been referred to this court's motion department to be assigned and scheduled.

You should be receiving further correspondence in regard to the assignment and scheduling of this matter.

Thank you,

Jeneen M. Wunder
Principal Law Clerk to the
Administrative Judge, Criminal Term
Eleventh Judicial District

1   you lived at that apartment?

2       A        Approximately, about five years.

3       Q        And did you have telephones in that apartment?

4       A        Yes, sir.

5       Q        How many telephones did you have in that

6   apartment?

7       A        There were two lines.  There were two separate

8   lines.

9       Q        When you say lines, were they portable phones,

10  phones attached to the walls?  What kind of phones were

11  they?

12      A        There was one regular phone and one portable.

13      Q        Go ahead.

14      A        So, when I took off my shoes and my socks I went

15  outside, went into the -- I took off my clothes and I put it

16  into one of the closets that I normally put my dirty

17  clothes.  And I went into the bathroom and took a shower.

18              I came out of the shower with a large bath towel

19  wrapped around my waist.  I went back into the bedroom and I

20  sat on the bed and I lotioned my hands and my legs and feet

21  and then I asked her, I asked Hollis if she could lotion my

22  back for me.  And she took the lotion.  I laid face down on

23  the bed and she was rubbing the lotion on my back in a

24  massaging manner.  Then she -- I was there for a while.  She

25  shocked me and asked me if I was sleeping and I said, No.

PETITIONER'S EXHIBIT "H"

1  and the other thing and showing you a gun and taking

2  out a pamphlet and showing you the pamphlet.  Why would

3  a person take out a pamphlet and show you, you know?  I

4  take out a gun and I show you a gun and your first

5  reaction is gee, that looks like a toy.  I saw

6  something on T.V.  Is that real?  I saw a kid on T.V.

7  that had something like that yesterday or last week.

8  Looks real and the guy is discussing it with her, that

9  this is not a toy, this is real.  You know how I would

10  show you it's real if I want to rape you?  I would --

11          MS. DALY:  Objection.

12          THE COURT:  I'll sustain the objection.

13          MR. AROUGHETI:  I apologize.  In any event,

14  there is no testimony that somebody said it's real.

15  You do this or you die.  You put it to them and say

16  this is real.  You don't have to explain it to them.

17  Why would you go to the trouble of going through your

18  closet and taking out the brochure and showing the

19  brochure of all of that stuff?

20          Mr. Lowe tells you quite candidly there was

21  no gun.  I didn't have a gun.  I didn't have a

22  brochure.  And you have all the evidence.  You can look

23  through the brochure, if you could find it and you

24  won't find it because nobody else found it and nobody

25  else found it because there wasn't any brochure.  Just

1    like the telephone. You could check the telephone to

2    see if it was in the case or not in the case or the

3    contents in the case, as soon as you could find the

4    case. Which the police had or didn't have or we don't

5    know because it's not in evidence and never produced.

6    No case. No phone. No nothing.

7         In any event, getting back to square one.

8    So, we have what Mr. Lowe then says. He asks me to get

9    undressed. Would you get undressed? No threats in

10   terms of I will kill you if you don't do this. You

11   must do this, whatever. Sexual activity goes on. She

12   says I was scared. I was threatened. He showed me the

13   gun. I feared for my life. Nobody could argue the

14   concept.

15        You know what? I'll tell you the truth, just

16   as human nature, you take that gun, whether it's loaded

17   or not loaded, put it to me --

18             MS. DALY: Objection.

19             THE COURT: I'll sustain that objection.

20             MR. AROUGHETI: Okay. So in any event, she

21   winds up having sex with this person and he winds up

22   going to sleep. And he winds up going to sleep and the

23   way he's going to protect that she won't escape,

24   because after all he did this dastardly deed and before

25   he did this dastardly deed he was telling her about

LM

1      Donald's and after that leaves to go to Brooklyn.

2                    We also know it's not in dispute when the

3      defendant finally left to go to Brooklyn, he locked the

4      dead bolt from the outside when he left, leaving Hollis

5      inside.

6                    We heard from police Officer Lo Bono and his

7      partner.  Lo Bono and his partner.  Police Officer Lo

8      Bono had to kick down the door several times after

9      Police Officer Arguello tried to knock down the door

10     with his shoulder.  You heard from Police Officer Lo

11     Bono that he weighs over two hundred fifty pounds, as

12     his partner on that date.  And we know that once when

13     they they were able to break down the door, that Hollis

14     was inside.

15                   We also know there was only one phone in that

16     apartment and we know it was locked in a case that had

17     a combination lock on it.  And that phone number was

18     718 337-1011, the same phone that was used earlier that

19     morning to call Shareen's place of work and the same

20     phone that was used after the police got it out of the

21     case and they hit redial, calling back to Shareen

22     Lyons' work.  And we know that case was broken open and

23     it had to be broken open with a sledge hammer and the

24     sledge hammer had to strike that case several times to

25     get the phone out of the case.

PETITIONER'S EXHIBIT I

1    first degree, two times, sodomy in the first degree two

2    times, criminal possession of a weapon and unlawful

3    imprisonment. After the judge charges you you will

4    have to decide if the defendant did, in fact, commit

5    each and every one of those crimes.

6         Now, let's look at the facts that were

7    testified to that are not in dispute and let's look at

8    the facts that were established by several witnesses.

9         The time of this incident, September 8, 1998

10   and September 9, 1998, the defendant lived at this

11   address, 1217 Norton Drive in Queens County. His

12   apartment was the one at the top of the stairs. And he

13   had a dead bolt lock on that door. And he needed a key

14   to get in it and he needed a key to get out. And he

15   had a Toyota four by four. And that's the vehicle he

16   drove on September the 8 and September 9.

17        We also know that his phone number on that

18   date was 718 337-1011, and we know that on the date of

19   September 9 there were calls placed from his residence.

20   On that date of September 9 there was a call to the

21   office of his ex-girlfriend, Shareen Lyons. We also

22   know that Hollis was looking for a place to live. We

23   also know that Hollis and the defendant went to the

24   defendant's apartment, 1217 Norton Drive, and we know

25   that the next morning the defendant leaves, goes to Mc

1        Q        And during those times when he left the premise

2    and he was nowhere there, did you ever try to look for a

3    telephone?

4        A        The phone was locked in a briefcase.

5        Q        A phone was locked in a briefcase?

6        A        That's correct.

7        Q        Did you ever look to see if there were any other

8    telephones in the premises?

9        A        That was the only phone I saw him use.

10       Q        I am asking you, did you look to see if there

11   were any other telephones?

12       A        No, I did not.

13       Q        By the way, at one point and time, correct me if

14   I'm wrong, all of this occurred because you were afraid that

15   you were going to be killed.  Is that the fear that he was

16   inside of you and that is what made you do all of things

17   that you did, fear?

18       A        That's correct.

19       Q        And at some point and time Mr. Clement Lowe goes

20   in to take a shower, right, and when he goes in to take a

21   shower he leaves in the bedroom, a phone, and a gun, right?

22   Am I right?

23       A        A telephone.

24       Q        And the gun?

25       A        A telephone.

LM

**PETITIONER'S EXHIBIT J**

1    picture that you saw?

2        A.    Yes.

3        Q.    And when you stopped at Pathmark, did you both get

4    out of the car?

5        A.    Yes.

6        Q.    Did he leave the weapon that's People's 2 in

7    evidence in the car?

8        A.    Yes.

9                    MS. DAILY:  I have nothing further.

10                   THE COURT:  Mr. Arougheti.

11                   MR. AROUGHETI:  One quick question.

12    CROSS-EXAMINATION

13    BY MR. AROUGHETI:

14        Q.    Those violations you said you were convicted of,

15    what were they?

16        A.    Disorderly conduct.  Something that I did ten years

17    ago.

18        Q.    On both of them?

19        A.    The other for drugs.

20        Q.    Drugs?

21        A.    Uh-huh.

22        Q.    Those were the only two convictions?

23        A.    Yes.

24                   MR. AROUGHETI:  I have no other questions.

25                   THE COURT:  Any redirect?

PETITIONER'S EXHIBIT "K"

1    whole thing of two days not want the police to come?

2    Why would you not want to tell the police what you

3    know?

4         When I made opening remarks to you, ladies

5    and gentlemen, that was not evidence.  It was not

6    intended to be evidence.  Opening statements are more

7    or less like a game plan and the D.A. has an idea

8    because she calls witnesses and she knows what her

9    witnesses are going to say, what her witnesses aren't

10   going to say.  She could say this is my game plan.  I,

11   on the other hand, didn't have a game plan.  I don't

12   know what the testimony is going to be.  I don't know

13   who these people are.  They're not my witnesses, so I

14   can't tell you, all right?

15        If I said something on opening argument that

16   is inconsistent with the testimony, understand that is

17   inconsistent, I wasn't there.  What I said in openings

18   is not evidence.  It was not intended to be evidence

19   and it wasn't evidence.  All right?  It may have been

20   based on the best information I had at the time or for

21   whatever reason.  Just sitting, just reminding you of

22   the fact that in light of the fact that it wasn't

23   evidence and I don't know exactly as I stand here right

24   now what I had said to you relative to opening

25   arguments, but, be that as it may, as long as you