$d/f$

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

CLEMENT LOWE,

                      Petitioner,

      -against-

MARK BRADT, Superintendent, Attica Correctional
Facility,

                    Respondent.

------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-793 (NGG)(LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

On February 14, 2012, Petitioner Clement Lowe filed the instant Petition pro se for a

Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254. Currently incarcerated at

Attica Correctional Facility, he challenges convictions rendered in Queens County Supreme

Court on February 13, 2001. (Dkt. 1.) Upon review of the record and the submissions of the

parties, the court concludes that the Petition must be dismissed as time-barred and that there is no

basis for statutory or equitable tolling. Therefore, for the reasons set forth below, Lowe's

Petition is DENIED.

## I. BACKGROUND

### A. Facts

On the evening of September 8, Petitioner lured the victim in the Queens County

Supreme Court case to his apartment in Far-Rockaway, Queens, where he repeatedly raped her at

gunpoint. (Aff. in Opp'n to C.P.L. § 440.10 Motion (Dkt. 13) at 44.) The following morning,

Petitioner raped the victim once more and left his apartment, stating he intended to kill his ex-

girlfriend and then himself. (Id.) After Petitioner's departure, the victim attempted to get help

1

by banging on the walls of the locked apartment. (Id.) A neighbor heard the banging and telephoned the police, who arrived shortly thereafter. (Id.) The victim in the Queens case informed police that Petitioner was going to Brooklyn to harm his ex-girlfriend and that he had a gun. (Mem. in Opp'n to Pet. for Writ of Habeas Corpus (Dkt. 14) at 5.) Petitioner was arrested shortly thereafter in Brooklyn while attempting to "slash" his ex-girlfriend. (Id.) Petitioner was convicted of his Brooklyn crimes on March 22, 2000, before his conviction in the Queens case on February 13, 2001. (Pet. at 8.)

### B. State Court Proceedings

Gerald Arougheti represented Petitioner at trial in Queens County Supreme Court. Arougheti attempted to obtain any relevant information regarding his client's case by filing an Omnibus motion for relevant discovery and Brady material prior to trial, and reviewed all materials obtained from the People with Petitioner. (See Ex. B Opp'n to Pet. for Writ of Habeas Corpus (Aff. of District Attorney in Opp'n to Motion to Vacate Judgment) (Dkt. 13) at 90.) As part of the discovery process, the People provided Arougheti with evidence concerning the Brooklyn crimes, including the criminal complaint which provided an approximate temporal window during which the crime took place. (Id. at 46.) In his capacity as Petitioner's attorney, Arougheti decided that, for a variety of reasons, using Petitioner's conviction for his Brooklyn crimes to show Petitioner could not have been in Queens committing other crimes would be unwise. (Pet. (Dkt. 1) at 41.) He consequently made every effort to purge references to the Brooklyn crimes from the record in the Queens case. (Ex. B to Opp'n to Pet. for Writ of Habeas Corpus (Dkt. 13) at 63.) Ultimately, against the advice of Arougheti, Petitioner decided to testify at trial regarding the details of the Brooklyn crimes. (Id. at 73.)

2

On February 13, 2001, Petitioner was convicted in Queens County Supreme Court of two counts of rape in the first degree, three counts of sodomy in the first degree, one count of criminal possession of a weapon in the second degree, and one count of unlawful imprisonment in the second degree. (Pet. ¶¶ 1-4.) He appealed his convictions to the Appellate Division, Second Department. (Id. ¶ 9(d).) The Appellate Division affirmed his convictions on October 20, 2003. People v. Lowe, 309 A.D.2d 877 (2d Dep't 2003). Petitioner requested leave to appeal from the New York Court of Appeals, which was denied on March 15, 2004. People v. Lowe, 810 N.E.2d 921 (N.Y. 2004). He did not petition for certiorari to the United States Supreme Court. (Pet. ¶ 9(f).) On April 12, 2005, Petitioner's appellate attorney, Yvonne Shivers, informed Petitioner that she was leaving her position with Appellate Advocates, and that if Petitioner wished to file a Section 440 motion to vacate his judgment, he should contact Lynn Fahey, Attorney-In-Charge at Appellate Advocates. (Pet'r Aff. (Dkt. 50 at 18.)

On December 10, 2008, Petitioner filed a motion pursuant to New York Criminal Procedure Law § 440.10 to vacate his judgment in the Queens County Supreme Court. (Pet. ¶ 10.) Petitioner's motion raised claims of ineffective assistance of counsel and newly discovered evidence. (Pet. ¶ 10(iii).) On June 24, 2010, the New York Supreme Court denied the motion on the merits on the basis that Petitioner's claims were procedurally barred pursuant to Criminal Procedure Law Section 440.10(2)(c) because sufficient facts appeared on the record for Petitioner to have raised each claim on direct appeal.[1] (See Ex. C to Decl. in Opp'n to Pet. for Writ of Habeas Corpus (N.Y. Sup. Ct. Decision & Order of June 24, 2010) (Dkt. 13-1) at 2.) Petitioner applied for leave to appeal to the Appellate Division, Second Department, and his application was denied on February 10, 2011. (Pet. ¶ 13.)

---

[1] The court also rejected Petitioner's claims based on its findings that his evidence was not "newly discovered" and that "the record clearly shows that . . . [Petitioner] received meaningful representation" from his trial counsel. (N.Y. Sup. Ct. Decision & Order of June 24, 2010 (Dkt. 13) at 2, 3.)

### C.   Habeas Petition

On February 14, 2012, Petitioner submitted the instant Petition for Writ of Habeas Corpus. (Dkt. 1.) Pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the court conducted an initial review of this Petition and determined that the Petition is likely time-barred by the one year statute of limitations under the Antiterrorism and Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Accordingly, by order dated February 23, 2012, the court directed Petitioner to show cause by written affirmation within sixty days why his Petition should not be dismissed as time-barred pursuant to 28 U.S.C. § 2254(d). (See Feb. 23, 2012, Mem. & Order (Dkt. 3).) Petitioner responded on April 2, 2012, setting forth the alleged basis for equitable tolling of the statute of limitations. (Dkt. 5.) Following Petitioner's submission, the court issued an order determining that the Petition should not be summarily dismissed as time-barred and ordered Respondent to file a limited answer to the Petition addressing its timeliness under 28 U.S.C. § 2244(d), or, in the alternative, if Respondent conceded that the Petition was timely, to file a complete and entire answer to the Petition. (See Aug. 14, 2012, Order (Dkt. 6).) Respondent submitted a response on October 26, 2012 (Dkt. 13), and Petitioner submitted a reply in further support of his petition on November 29, 2012. (Dkt. 16.)

## II.   HABEAS CORPUS STANDARDS

Under 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief: (1) exhaustion; (2) lack of a procedural bar; and

(3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

## A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," meaning that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (internal quotation marks omitted).

"A petitioner is not required to cite 'book and verse on the federal constitution' in order for a claim to be 'fairly presented.'" Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011 WL 3298876, at *6 (E.D.N.Y. Aug. 1, 2011) (quoting Picard v. Connor, 404 U.S. 270, 275, 278 (1971)). "Instead, exhaustion may be satisfied where the legal basis of a claim made in state court is the 'substantial equivalent' of the habeas claim." Id. (quoting Picard, 404 U.S. at 278). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye, 696 F.2d at 192. Thus, even if a petitioner does not cite any federal constitutional provisions, he may fairly present his federal claim to the state court through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call in mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194.

Notably, every claim that a petitioner makes in his Section 2254 application must first have been raised in state court in order for the petition to be considered exhausted. This "total exhaustion" rule requires that "a district court [ ] dismiss habeas petitions containing both unexhausted and exhausted claims." Rose v. Lundy, 455 U.S. 509, 513, 522 (1982). But there is an important exception to the total exhaustion rule—created by a 1996 amendment to AEDPA—whereby a district court may deny an entire habeas petition on the merits notwithstanding a petitioner's failure to exhaust some or all of his claims. See 28 U.S.C. § 2254(b)(2). That is, a court may on the merits deny but not grant "mixed petitions." Caswell v. Racetti, No. 11-CV-0153 (MAT), 2012 WL 1029457, at *4 (W.D.N.Y. Mar. 26, 2012) (citing Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001)).

**B. Procedural Bar**

"It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009) (internal quotation marks omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."[2] Id.

"[T]he adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." Id. (internal quotation marks and alteration omitted). Thus, courts "have an independent duty to scrutinize the application of state rules that bar [its] review of federal claims." Id. at 468.

---

[2] As an exception, a court may consider a procedurally barred claim on the merits if the prisoner demonstrates: (1) "cause" for failing to comply with the state procedural rule; and (2) "prejudice" from the procedural bar. Wainwright v. Sykes, 433 U.S. 72, 92 (1977).

The concepts of procedural bar and exhaustion often interact in an important way. If a Section 2254 petitioner has failed to present a claim to a state court but can no longer do so—for example, if the time to file a state-court appeal has passed—then that claim is considered procedurally barred rather than unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court [ ] resulted in a procedural default of those claims"); Philbert v. Brown, No. 11-CV-1805 (NGG), 2012 WL 4849011 at *6 (E.D.N.Y. Oct. 11, 2012) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied" but the petitioner is barred "from litigating the merits of th[at] claim[] in federal habeas proceedings") (quoting Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991)). A court's conclusion that a claim is procedurally defaulted rather than exhausted permits the petitioner to avoid the harsh effects of the "total exhaustion" rule discussed above—that is, if a claim has not been presented to the state court but can no longer be brought in state court, the court may consider the petitioner's remaining claims on the merits so long as those claims have been exhausted. See Turner, 262 F.3d at 122-23.

## C.    AEDPA Deference and Limitation Period

Where a state court does reach the merits of a claim asserted in a Section 2254 habeas petition, the state's decision is reviewed under the deferential standard set forth in AEDPA, which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

7

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

Under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

8

AEDPA also sets a one-year limitation period for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to state court conviction. 28 U.S.C. § 2254(d)(1). The applicable one-year period runs from the date on which one of the following events occurs, whichever is the latest:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

## III. DISCUSSION

At the outset, the court is mindful that "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations omitted) (emphasis omitted). Furthermore, the court acknowledges that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## A.  Exhaustion and Procedural Bar

Even construing Petitioner's submissions liberally, it cannot be said that he raises the substantial equivalent of the claims made in state court that he asserts in his petition for writ of habeas corpus.  See Picard, 404 U.S. at 278.  In his motion for state post-conviction relief, Petitioner asserted claims of newly discovered evidence and ineffective assistance of counsel. (See Pet. (Dkt. 1 at 3).)  In his habeas petition, Petitioner raises a longer list of claims, including ineffective assistance of counsel, unreasonable determination of facts, tainted evidence, and fundamental miscarriage of justice.  (Id. at 4.)  Although the two sets of claims overlap, Petitioner has not met the "total exhaustion" requirement.  See Rose, 455 U.S. 509, 513, 522 (1982).

Petitioner's application for federal habeas review must also be barred on procedural grounds.  In reviewing Petitioner's motion for post-conviction relief, the Queens Supreme Court decided that all of Petitioner's claims were procedurally barred because he failed to raise them on direct appeal, and there were sufficient facts on the record that would have allowed him to do so.  (Dkt. 13 at 107.)  The court based its decision on New York Criminal Procedure Law Section 440.10(2)(c), which provides that the court must deny a motion to vacate on procedural grounds when:

> "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him…"

N.Y. Crim. Proc. Law § 440.10(c)(2).

The Queens Supreme Court's holding that Petitioner's claims for post-conviction relief were procedurally bared constitutes an adequate and independent state ground that

precludes federal review of those claims. On appeal, Petitioner asserted only that he was deprived of his rights "to be present at all material stages of his trial," including "an in-chambers telephone hearing regarding his pre-arraignment statements to his attorney." (Pet., Dkt. 1 at 2.) The Appellate Division denied this appeal. People v. Lowe, 309 A.D.2d 877, 766 N.Y.S.2d 61 (2003).

Petitioner's motion for post-conviction relief at the state level raised claims of ineffective assistance of counsel and newly discovered evidence. (See Pet. (Dkt. 1 at 3).) Petitioner did not raise an ineffective assistance of counsel claim on appeal, even though he was represented by a different attorney on appeal than at trial. (See Pet. (Dkt. 1 at 5.) Petitioner also failed to raise a claim of newly discovered evidence on appeal. As noted by the Supreme Court of the State of New York and as discussed further below, the evidence Petitioner references was not newly discovered, but was in fact available to both Petitioner and his attorney at trial. (Dkt. 1 at 35.)

The decision of the Supreme Court of the State of New York to deny the motion to vacate thus qualifies as an adequate and independent state ground barring federal habeas review. Petitioner has not shown cause and prejudice that would allow for federal review of his unexhausted and procedurally defaulted claims. See Sykes, 433 U.S. at 92. Even if some residuum of Petitioner's claims were exhausted and not procedurally defaulted and thus could be subjected to federal review, AEDPA's time bar precludes this potentiality.

**B.    AEDPA Limitation Period**

The instant Petition was filed after April 26, 1996, the effective date of the AEDPA, and is thus subject to the AEDPA's statute of limitations. 28 U.S.C. § 2254(d)(1); see Lindh v. Murphy, 521 U.S. 320, 327 (1997). Subsection (d)(1)(A) governs the time limit for the filing of

the instant petition.[3] According to this subsection, the one-year period within which Petitioner had to file a habeas petition began running on or about June 13, 2004, which was when the time expired for him to seek review of the denial of his direct appeal from the Supreme Court of the United States. (See Pet. ¶ 9(f).) See also Williams v. Artuz, 237 F.3d 147, 150 (2d Cir. 2001) ("[A] petitioner's conviction bec[omes] final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expire[s].") (internal quotations omitted).

Under the AEDPA, Petitioner had one year from June 13, 2004, to seek a writ of habeas corpus in federal court. Thus, as the court has already determined, Petitioner's deadline for filing his Petition was on or about June 13, 2005, unless he was entitled to either statutory or equitable tolling. (See Feb. 23, 2012, Mem. & Order, 2.) Petitioner, however, waited to file until February 14, 2012, 2,802 days after June 13, 2004, the date his conviction became final, and 2,437 days past the AEDPA's one-year time limit. (See Pet., Dkt. 1.)

In his affirmation, Petitioner does not argue that he is entitled to statutory tolling. Petitioner argues, however, that he is entitled to equitable tolling because (1) his state appellate attorney, Yvonne Shivers, "promised" but failed to file a C.P.L. § 440.10 motion asserting ineffective assistance of trial counsel on his behalf; (2) she did not inform him of AEDPA's one-year limitations period; and (3) his newly discovered evidence, the alleged time period of his Brooklyn crimes, which forms the basis of his habeas claim, could not have been discovered previously through the exercise of due diligence. (Pet'r Aff., (Dkt. 5) at 2.) Petitioner also argues that his actual innocence should toll the statute of limitations. (Id. at 4.) Given the seven-year period that Petitioner seeks to toll, he bears a heavy burden to show that the circumstances

_____

[3] Subsection (d)(1)(D) does not govern the time limit for the filing of the petition because, as discussed below, the factual predicate for Petitioner's claims could have been discovered before June 14, 2004. See Rivas v. Fischer, 687 F.3d 514, 534 (2d Cir. 2012).

were extraordinary and that he acted with reasonable diligence throughout the period. Petitioner has not met his burden. The court will address each of Petitioner's arguments for tolling in turn.

### C.     Statutory Tolling

The AEDPA provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the AEDPA's one year limitation period. 28 U.S.C. § 2244(d)(2). However, filing a post-conviction motion does not reset the one-year period; rather, Section 2244(d)(2)'s tolling provision merely excludes the time a post-conviction motion is under submission from the calculation of the one-year period. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam).

Petitioner filed his motion to vacate judgment pursuant to C.P.L. § 440.10 on October 6, 2008, more than three years after the AEDPA statute of limitation had expired. Therefore, the filing of this post-conviction motion does not toll the statute of limitations. See Evans v. Senkowski, 228 F.2d 254, 260 (E.D.N.Y. 2002) (explaining that AEDPA's tolling provision "stops, but does not reset, the clock from ticking on the time in which to file a habeas petition. It cannot revive a time period that has already expired.") (citing Smith, 208 F.3d at 17).

### D.     Equitable Tolling

In "rare and exceptional circumstances a petitioner may invoke the courts' power to equitably toll the limitations period." Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004) (internal quotations omitted); see also Belot v. Burge, 490 F.3d 201, 205 (2d Cir. 2007). Equitable tolling may only be applied if the petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 130 S. Ct. 2549, 2562, (2010) (internal

13

quotations marks omitted). Specifically, petitioner must show that extraordinary circumstances prevented him from filing on time and that he acted with reasonable diligence throughout tolling period. See Smith, 208 F.3d at 17. The Second Circuit has established a "high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011). A petitioner must also "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (citation omitted). This demonstration cannot be made "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Id. Furthermore, "the proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008). Examples of such unusual circumstances that would justify equitable tolling include ". . . a corrections officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, . . . a state appellate court's failure to inform a prisoner that his leave to appeal was denied, . . . an attorney's failure to file a habeas petition on behalf of a prisoner, despite explicit directions from the prisoner to do so." Dillon, 642 F.3d at 363 (citations omitted). The petitioner bears the burden of demonstrating that he is entitled to equitable tolling. Muller v. Greiner, 139 F. App'x 344, 345 (2d Cir. 2005); see also Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001).

         1.     Extraordinary Circumstances

None of the circumstances that Petitioner alleges prevented the timely filing of his petition are "sufficiently extraordinary" to meet the high bar required to warrant equitable tolling. See Dillon, 642 F.3d at 363.

First, Petitioner argues that he is entitled to equitable tolling because Shivers, his appellate counsel, did not inform him of AEDPA's one-year limitation period. (Pet'r's Aff. at 2.) Even assuming this claim is true, it is well-settled that ignorance of the law does not entitle a petitioner to equitable tolling. See Doyle v. Yelich, No. 05-CV-2750 (JG), 2005 WL 2475727, at *2 (E.D.N.Y. Oct. 7, 2005) (petitioner's ignorance of the law does not warrant equitable tolling); see also Ahmed v. Brown, No. 06-CV-02857 (CBA), 2006 WL 2355838, at *1 (E.D.N.Y. Aug. 15, 2006) (collecting cases). Furthermore, the Second Circuit has established that "attorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period" unless an attorney's behavior can be said to "be so outrageous or so incompetent as to render it extraordinary." Baldayaque, 338 F.3d at 152 (emphasis omitted). Petitioner's appellate counsel's failure to inform him of AEDPA's limitation period is neither "outrageous" nor "incompetent," but rather an example of an "'ordinary mistake' made by counsel regarding 'the rules applied to the deadlines for filing of habeas petitions' which does not justify equitable tolling." Dillon, 642 F.3d at 363 (quoting Baldayaque, 338 F.3d at 152). Even assuming that Shivers erred as Petitioner claims, this error would be inadequate to create the extraordinary circumstances required to equitably toll the statute of limitations.

Petitioner also argues that he is entitled to equitable tolling because his appellate attorney "promised" but failed to file a C.P.L. § 440.10 motion on his behalf. (Pet'r Aff. (Dkt. 5-1) at 2).) In support of this claim, Petitioner supplies three letters from his appellate attorney. (Id. at 5-8.) Only one of these letters, dated April 12, 2004, makes any mention of a Section 440 motion. In this letter, Shivers informed Petitioner that she was leaving Appellate Advocates; that "because the Court of Appeals has denied leave," his case is considered "closed" and no attorney will be assigned to it; and that if he had any questions or needed assistance regarding his Section 440

15

motion, he could contact Lynn Fahey, the Attorney-In-Charge. (Id. at 18.) Petitioner claims to have attempted to contact Ms. Fahey after receiving this letter, but appears not to have attempted to contact Ms. Fahey again regarding a Section 440 motion until 2007. (Id. at 11.) Petitioner does not provide any other correspondence from Shivers regarding the Section 440 motion, nor does he provide a declaration or affidavit from her acknowledging that she promised to file such a motion.

The evidence that Petitioner has submitted is insufficient to show that Shivers's actions were "far enough outside the range of behavior that reasonably could be expected by a client that they may be considered 'extraordinary.'" Baldayaque, 338 F.3d at 152; see also Rivas v. Fischer, 687 F.3d 514, 539 (2d Cir. 2012) (finding that attorney's failure to file a Section 440.10 motion sooner was not sufficient to constitute an extraordinary circumstance). "In order to rise to the level necessary to constitute an 'extraordinary circumstance,' for purposes of tolling § 2254's limitation period, attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship." Rivas, 687 F.3d at 538. Indeed, in Dillon, in which attorney conduct was found to constitute an extraordinary circumstance, the petitioner's attorney "admitted affirmatively and knowingly *misleading* [the petitioner] by promising him that he would file the petition [on time]." Dillon, 642 F.3d at 364 (emphasis in original). In that case, counsel repeatedly assured the petitioner and his wife that he would file a petition for a writ of habeas corpus before the deadline. (Id.) In this case, Shivers explicitly stated she was leaving Appellate Advocates, and that if Petitioner wanted to file a Section 440.10 motion, he should contact Lynn Fahey. (Pet'r Aff. (Dkt. 5-1) at 5.)

Finally, even if there were sufficient evidence to prove that Shivers had promised and failed to file a Section 440 motion on Petitioner's behalf in 2004, it is unclear how such a failure

16

would have prevented him from timely filing a habeas petition. While a properly filed application for state post-conviction review may have tolled the statute of limitations thereby giving Petitioner more time to file a habeas petition, failure to file such a claim in no way precluded or prevented Petitioner from filing a separate habeas petition in federal court in a timely manner. At best, had Shivers filed a Section 440 motion in 2004, the statute of limitations would have been tolled while that claim was pending. Yet, Shivers's failure to file such a claim in 2004 does not explain why Petitioner brought his habeas claim in 2012.

### 2. Reasonable Diligence

Even assuming, however, that Shivers' alleged failure to file the Section 440 motion and inform Petitioner of AEDPA's statute of limitations could constitute "extraordinary circumstance[s]," equitable tolling would not necessarily be warranted. Petitioner would still need to prove that he acted with reasonable diligence in asserting his claims throughout the seven-year period he seeks to toll. Baldayaque, 338 F.3d at 153. Petitioner has not met this burden.

Petitioner claims that he received ineffective assistance of trial counsel because his trial attorney failed to obtain alleged audio-tapes[4] memorializing telephone conversations between Petitioner and the victim that would have proven helpful to the defense. Petitioner was present at his trial and thus "on notice of the facts which would support his claim" as of 2001. See Hector v. Greiner, No. 99-CV-7863 (FB), 2000 WL 1240010, at *2 (E.D.N.Y. Aug. 29, 2000). Therefore, Petitioner could have brought this ineffective assistance of counsel claim at the end of his trial in 2001.

---

[4] Aside from Petitioner's claims, there is no evidence to suggest that any audio-tapes existed. In an affidavit, Petitioner's trial attorney stated that he prepared and filed an "extensive Omnibus Motion . . . demanding . . . relevant discovery and Brady material. Had the People actually possessed any tapes . . . these requests would have required them to produce any such items. None were produced." (Resp. to Pet. for Writ of Habeas Corpus (Dkt. 13 at 90).)

Petitioner also argues that he possesses newly discovered evidence—the timeframe of the Brooklyn Criminal Court complaint—demonstrating that he could not have committed the crimes in Queens because the criminal court complaint in his Brooklyn case states that he was in Brooklyn throughout the morning of September 9, 1998, at a time when the prosecution in his Queens case argued he was committing his crimes in Queens. (Pet'r Aff. at 3-4.) He alleges that this evidence could not have been discovered previously through the exercise of due diligence. This evidence, however, was provided to his trial counsel in advance of Petitioner's trial as part of the discovery process. (See Aff. of District Attorney in Opp'n to Motion to Vacate Judgment (Ex. B to Decl. in Opp'n to Pet. for Writ of Habeas Corpus) (Dkt. 13) at 4.) "Evidence in existence at an earlier date, though perhaps unknown to a petitioner, cannot later be described as new evidence." Hector v. Greiner, No. 99-CV-7863 (FB), 2000 WL 1240010, at *1 (E.D.N.Y. Aug. 29, 2000) (collecting cases). The Brooklyn Criminal Court complaint thus does not qualify as newly discovered evidence.

Petitioner must demonstrate that he acted with reasonable diligence "throughout the period he seeks to have tolled." See Harper v. Ercole, 648 F.3d 132, 134 (2d Cir. 2011). In order for Petitioner's claim to clear AEDPA's time bar, he would need to demonstrate reasonable diligence in pursuing his habeas petition for at least the period ranging from June, 2005, when AEDPA's time limit expired, until October, 2008, when he filed his Section 440 motion, a period of more than three years. He would also need to show reasonable diligence for the period between the Appellate Division's denial of review of his Section 440 motion on February 10, 2011, and the ultimate filing of the instant petition on February 14, 2012. Petitioner has not done so. He did seek evidence that he thought might support a Section 440 motion to vacate. However, he did not exercise reasonable diligence in pursuing a petition for writ of habeas

corpus, and has identified no extraordinary circumstances that prevented him from filing. In any event, as discussed below, Petitioner's evidence was, in fact, not "new evidence," that would have supported a credible and compelling claim of actual innocence.

### E. Actual Innocence

Petitioner's affirmation also contains an "assertion of innocence." (Pet'r Aff. at 4.) District courts faced with untimely petitions asserting actual innocence must determine whether the petitioner has presented a credible claim of actual innocence before ruling on the legal issues of whether such a showing provides a basis for equitable tolling, and whether the petitioner must also demonstrate that he or she pursued his or her claim with reasonable diligence. Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004). Actual innocence means factual innocence, not mere legal insufficiency. Rosario v. United States, 164 F.3d 729, 733 (2d Cir.1998) (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)).

To demonstrate actual innocence, "a petitioner must present 'new reliable evidence that was not presented at trial' and 'show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.'" Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 114 (2d Cir. 2000) (quoting Schlup v. Delo, 513 U.S. 298, 299, 327-28 (1995)). "A claim of actual innocence must be both 'credible' and 'compelling.'" Rivas, 687 F.3d at 541 (quoting House v. Bell, 547 U.S. 518, 521, 538 (2006)). A claim is "credible" if it is supported by "new reliable evidence . . . that was not presented at trial." Schlup, 513 U.S. at 324; see also House, 547 U.S. at 537. For the claim to be "compelling," the petitioner must demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." House, 547 U.S. at 538. This "standard is 'demanding and permits

review only in the extraordinary case.'" Rivas, 687 F.3d at 542 (quoting House, 547 U.S. at 538).

The Supreme Court recently held that actual innocence, if proved, can serve "as a gateway through which a petitioner may pass whether the impediment is a procedural bar" or "expiration of the statute of limitations." McQuiggin v. Perkins, 133 S.Ct. 1924, 1928 (2013). However, the Court cautioned that "tenable actual innocence gateway pleas are rare" as the demanding Schlup standard must still be met. Id. at 1928; see Schlup v. Delo, 513 U.S. at 329 ("[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt").

Petitioner argues that the timeframe of the Brooklyn Criminal Court complaint constitutes "newly discovered evidence" that demonstrates his innocence. (Pet'r Aff. at 3-4.) As discussed above, the Brooklyn Criminal Court complaint does not constitute "newly discovered evidence" because it was provided to trial counsel in advance of the trial as part of the discovery process. (See Aff. of District Attorney in Opp'n to Motion to Vacate Judgment (Ex. B to Decl. in Opp'n to Pet. for Writ of Habeas Corpus) (Dkt. 13) at 4.) In addition, the complaint on which Petitioner relies states that the recorded timeframe is "approximate[ ]." (See Ex. A to Pet. (Dkt. 1) at 32.) Indeed, the complaint provides a five and a half hour window during which Petitioner was accused of committing his Brooklyn crimes. (Id.) As such, the complaint is not intended to be a minute-by-minute account of Petitioner's whereabouts on September 9, 1998. This complaint does little, if anything, to militate against what Petitioner's trial counsel described as the prosecution's "extremely strong case" which consisted of "the rape victim's testimony, the testimony of police who were forced to break down the door to Petitioner's apartment, to rescue

20

her, and the seizure from my client's car of the weapon that my client has used to subdue her."
(Id. at 47-48.)

In his Memorandum in support, Petitioner renews the claims of ineffective assistance of counsel he made in state court proceedings to buttress his claim of actual innocence. (Mem. (Dkt 13 at 9).) But Petitioner has failed to demonstrate that the conduct of his trial attorney "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). Although Petitioner disagrees with certain strategic choices made by Arougheti during trial—principally his choice to avoid any reference to the Brooklyn crimes—such disagreements are not sufficient to demonstrate ineffective assistance of counsel under Strickland, and do not suggest that the trial court, or the state court of appeals, arrived at an unjust result. Id. at 690. On the contrary, as the Queens County District Attorney detailed in his Affirmation in Opposition to Petitioner's Section 440 motion, Arougheti worked diligently as an advocate for Petitioner, though his defense theory was undermined by Petitioner's decision to testify regarding the crimes he committed in Brooklyn. (See Aff. of District Attorney in Opp'n to Motion to Vacate Judgment (Ex. B in Opp'n to Pet. for Writ of Habeas Corpus) (Dkt. 13 at 63-88).)

The court finds that Petitioner has failed to present a credible claim of actual innocence. See Doe, 391 F.3d at 161. He presents no new or reliable evidence making it more likely than not that no reasonable juror presented with that evidence would have convicted the petitioner. See Schlup, 513 U.S. 298 at 327. There is no indication that failures of his trial attorney were responsible for Petitioner's inability to present such evidence. Moreover, Petitioner fails to demonstrate that he has diligently pursued his federal claims in the intervening seven years, and his affirmation does not offer any circumstances that would qualify as extraordinary and justify

21

the lengthy delay in initiating this Petition. <u>Smith</u>, 208 F.3d at 17. Thus, Petitioner is not entitled to equitable tolling of the statute of limitations to excuse the tardiness of his Petition.

## IV. CONCLUSION

For the reasons set forth above, Lowe's Petition for Writ of Habeas Corpus is dismissed as time-barred under 28 U.S.C. § 2244(d)(1). A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of appeal. <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to enter judgment and close this case.


SO ORDERED

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     July _8_, 2014

NICHOLAS G. GARAUFIS
United States District Judge

22